IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 17, 2013 Session

## SCOTT J. WEXLER v. JAMES REED, JR. ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 1-368-12     Dale C. Workman, Judge**

_____

### No. E2013-00219-COA-R3-CV-FILED-NOVEMBER 25, 2013

_____

Scott J. Wexler sued James Reed, Jr., and Robert Rankin in the General Sessions Court for Knox County to recover damages based on an alleged fraudulent sale of goods. The general sessions court awarded a judgment in Wexler's favor in the amount of $2,000, the purchase price of the goods, plus costs. Defendants appealed to the trial court. After a bench trial, the court awarded a judgment in favor of Wexler, but reduced the amount to $1,025 including interest. Wexler appeals.[1] We modify the judgment to reinstate the award of $2,000 plus costs.

**Tenn R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed as Modified; Case Remanded**

CHARLES D. SUSANO, JR., P.J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Scott J. Wexler, Brighton, Michigan, appellant, pro se.

No appearance by or on behalf of the appellees, James Reed, Jr., and Robert Rankin.

_____

[1]We note that no brief was filed on behalf of the appellees. Further, there is no transcript of the trial court proceedings. Instead, the appellant has prepared a statement of the evidence pursuant to Tenn. R. App. P. 24(d).

**OPINION**

**I.**

In April 2011, Wexler met Rankin, President of National Development Associates, a firm based in Knoxville. On June 2, 2011, Rankin emailed Wexler about an opportunity to "get a good buy" on the purchase of five 40-foot steel "I-beams" that formerly supported an advertising sign. Rankin said the beams had a retail value of over $8,000. Rankin added that a sale had already been negotiated for a purchase price of $2,500 with another party, but the prospective buyer had not yet come up with the money. Rankin's email concluded: "I told the seller you might be willing to buy them tomorrow; and you could leave them on his property for the time being (few months at least)." Five days later, Wexler sent Rankin a check for $2,000. Wexler intended to use the beams for a "future sign"of his own. Rankin split the money he received from Wexler "50/50" with Reed, his partner in the deal.

As it turned out, Defendants did not own the beams they sold to Wexler. In 2006, Reed had leased property he owned off of Interstate 40 to The Lamar Companies for an outdoor advertising sign. Lamar installed the sign and provided the beams and other materials that held the structure. Lamar's lease with Reed expressly provided that "all structures, equipment and materials placed upon the premises by [Lamar] shall remain the property of [Lamar] and may be removed by [Lamar] at any time prior to or within a reasonable time" after expiration of the lease agreement. After Lamar cancelled the lease, it removed its sign and lighting and cut down the beams, but did not immediately remove them from Reed's property. At trial, Reed took the position that Lamar abandoned the beams and they were his to sell. He admitted, however, that he never spoke with anyone at Lamar after the lease ended about the beams. For his part, Rankin admitted he brokered the deal with Wexler but had no ownership interest in the beams. Jason Ammonette, a representative of Lamar, testified that the beams belonged to the corporation – it was not Lamar's policy to abandon its property or donate materials to a property owner when a lease ended, and Lamar never authorized Reed to sell the beams in question. In September 2011, Wexler discovered the beams were gone from Reed's property. After filing a police report and communicating with Ammonette, Wexler filed suit against Defendants.

In general sessions court, judgment was entered against Defendants in the amount of $2,000 plus costs. The trial court also found in Wexler's favor, but reduced the award to $1,025 including interest, plus costs. Wexler filed a motion for relief from judgment in which he relied upon an "excusable error" by the trial court in its reduction of the damages. He asserted that reducing the award by one-half – to $1,000 – essentially rewarded Defendants for their wrongful action. The trial court denied the motion based on its implicit finding that Wexler "failed to prove the value of his loss"at trial.

II.

On appeal, Wexler asserts that the trial court erred in reducing the judgment award. He reiterates his position that it is unjust to allow Defendants to keep any monies they "illegally" obtained by selling him goods that they did not own. Wexler concludes that the only proper remedy is to award him a judgment for $2,000 plus costs. We agree.

"The determination of the appropriate amount of damages is a question of fact, which we review de novo, presuming the trial court's finding to be correct unless the evidence preponderates otherwise." Tenn. R. App. P. 13(d). ***Hobbs v. Hobbs***, W2004-01553-COA-R3-CV, 2005 WL 1541866 at *3 (Tenn. Ct. App. W.S., filed June 29, 2005).

Here, the trial court awarded Wexler $1,025 – "the value he would have received if he had the beams" and interest. The court acknowledged Wexler's testimony that he bought the beams for $2,000, but found that "[Wexler] testified the value of the beams was $1,000.00." We have reviewed the record and conclude that the evidence preponderates against this latter finding. It is undisputed that Wexler paid Defendants the agreed purchase price of $2,000. On our review, we find no testimony by Wexler – or anyone else – valuing the beams at $1,000. The statement of evidence reflects only that Wexler, acting as his own attorney, questioned Lamar's representative as follows: "[I]f the scrap value of the steel was *at least one thousand dollars*, would Lamar ever just abandon the steel?" (Emphasis added.) In this manner, Wexler sought to refute Reed's contention that the steel beams were his to sell because Lamar had left them on his property. In no way can the hypothetical question posed by Wexler be construed as "evidence" of the value of the actual beams that Wexler purchased from Defendants. In short, the parties valued the beams at $2,000, the price Wexler paid. The evidence preponderates against the trial court's finding that they were valued at $1,000 or that Wexler "failed to prove his loss." We therefore modify the judgment of the trial court to reinstate the award in favor of Wexler of $2,000 plus costs.

III.

The judgment of the trial court is modified to award damages in the amount of $2,000 plus costs. As modified, the judgment is affirmed. Costs on appeal are taxed to the appellees, James Reed, Jr., and Robert Rankin. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and for the collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., PRESIDING JUDGE

-3-